We'll hear argument first this morning in Case 11-218, Tibbals v. Carter. Ms. Schimmer. Mr. Chief Justice, and may it please the Court, this case is here from the Sixth Circuit, which held that habeas claims can be stayed indefinitely because prisoners have a statutory right to competence to assist in their case. But even Mr. Carter now disowns the Circuit's rationale, and the Court's indefinite stay order was wrong for two other reasons. First, habeas claims cannot be stayed indefinitely. Doing so is fundamentally incompatible with the timeliness concerns underlying AEDPA. Second, while we readily acknowledge that limited stays would be appropriate in some situations, this is not one of them. All of Mr. Carter's claims are record-based and therefore resolvable without his assistance. Sotomayor What situations would they be appropriate in? Ms. Schimmer. Limited stays. We think, Your Honor, would be stay appropriate in situations where the prisoner's ability to effectively communicate with his counsel or to disclose evidence would be necessary to his claim, and we think that would be true in a case potentially where AEDPA does not restrict Federal review to the State court record. So here, for instance, we think that the prisoner's assistance would not be necessary, and therefore even a limited stay would not be appropriate, because all of Mr. Carter's claims were made for the State courts and decided on the merits, and therefore under 2254d in this Court's decision in Pinholster, the Federal court is limited to reviewing the State court record. We don't think that the prisoner's assistance in that case is necessary. We don't think Mr. Carter has made a case for why his assistance would be necessary in this specific case. Kennedy Well, why shouldn't the rule be that an indefinite stay is never necessary? You just proceed based on the evidence you have. Sometimes we have evidence where a witness is missing. We have to go on with the case. Then it could be open to argue in a later case that there was new evidence that was not available. Sotomayor Well, we absolutely agree, Justice Kennedy, that indefinite stays are never appropriate, regardless of the circumstances, that indefinite stays contravene AEDPA's timeliness concerns. And to the extent that all of the parties in this case agree now, that to the extent district courts have some power to issue stays, we say only limited stays in these cases, that power is grounded in equitable discretion, and we do not think that it comports with equitable discretion to allow a prisoner essentially to win his case, to obtain a suspension of his capital sentence, the ultimate end relief that he seeks. Kennedy What about the second part of the question? Suppose that there's no stay, the habeas proceeding is adjudicated against the Petitioner. He then becomes confident and claims there's new evidence. Would that be grounds to reopen, do you think? Sotomayor Well, we think in those situations, certainly the State of Ohio wouldn't contest, for instance, under 2254b, that if you were incompetent before, that that would be a legitimate basis potentially for not having been able to reasonably discover a new claim if one had a new claim. So we do think that moving forward, that no indefinite stay should be permitted. And when the courts move forward, yes, if someone's competency is later restored, there are backstops. The person, certainly in Ohio, can always go back to State court. Kennedy And would the backstop be newly discovered evidence? Sotomayor The backstop would be a newly discovered claim, I would say. I think that would be the case. Kagan No, you would not. Kagan No, you would not. Sotomayor Ms. Schumer, if you are right that no stay was appropriate in these circumstances, we would never reach the question of how much of a stay is appropriate in other circumstances, isn't that right? Schumer I think that's right, because I think to the extent that using this case as a springboard, the Court could draw the boundary line, could draw one bright boundary line and say indefinite stays are never permitted, but limited stays might be permitted in cases where the claims are not record-based. Kagan I'm saying the exact opposite. In other words, if there was one bright line which says that stays are not appropriate in a record-based claim because there's really nothing that the client can contribute, then we'd have no need or cause to reach the second question of what happens in a case where a stay might be appropriate, how long that stay should be. Schumer That's correct, Your Honor. I'm sorry. I agree. I agree with you that the Court could rule on that ground. Scalia Have you thought of what I did? Scalia Alternatively, we could rule that indefinite stays are never appropriate, in which case it would be unnecessary to decide whether any stay is appropriate for a record-based claim, right? Kagan That is true, too. That is an option. Scalia We can do it from either end. Kagan That is true, too. Scalia Or we could decide both, I suppose. Kagan I suppose, yes. I mean, we would urge the Court to, I think, do both, to say. Sotomayor Am I understanding that your position in response to the question from Justice Scalia and Justice Kennedy is that for you, indefinite is any stay whatsoever? It sounds like what you're proposing or in response to them is that no stay for purposes of determining competence, whether it's short or long, is permissible. Is that your argument? Kagan That is not our argument, Justice Sotomayor. Our definition of an indefinite stay is a stay that is imposed until the prisoner is restored to competence. Ginsburg Like the stay in Reese. Kagan Like the stay in Reese, or really like the stay in the Sixth Circuit. Ginsburg But you would have to maintain your position, the Court would have to qualify Reese, or at least the interpretation that says the stay should be indefinite once the Petitioner is found incompetent, because that's what happened there. The Court said, find out if he's competent. The answer was he is incompetent, and then the Court just let it sit until the man died. Kagan Well, Your Honor, we don't think that Reese really has any force or provides any guidance in this case. That, of course, was a case where a prisoner was seeking to abandon his further appeals. There are multiple reasons why we think that Reese does not endorse the power of Federal courts to indefinitely stay habeas proceedings. One is the fact that the court's stay order was completely unexplained and very terse, didn't announce any rule of law. Second, the historical record shows that the court's stay in Reese was at most a judicially negotiated settlement, meaning far from a demonstration of the court's inherent power, it seemed to be a very carefully orchestrated exercise of consented-to power. The third point is that I could take objection to that characterization because the clerk of the court told the court that neither party was happy with what was happening, and the court still entered the order. But let me go back to my question a moment. Amici say that most competency issues are resolved within months, and that many individuals, the vast majority, are restored to competency with proper medication within months. Are you opposing those kinds of stays? Not where it's appropriate, no, Your Honor. And again, our definition of an indefinite stay is a stay that's never permitted. Sotomayor, under your definition, it's never appropriate, really. You argue two things. You say under Pinholster, courts always have to rely on the record. Correct. We would say here's how we would taxonomize the appropriateness of stays. We would say indefinite stays are never permitted, meaning a court can never premise a stay exclusively on the restoration of the prisoner's competency in saying however long it takes. Sotomayor, even though a doctor says it can be done, we have to try? If a doctor says it can be done, we have to try, and it's a situation where it's appropriate. Well, they can never say it can be done. They can say we have to try. Right. There's a reasonable probability that it can be done. We would say, Your Honor. That's also, I'm not sure how they can do that until they try. Right. So we would say in certain situations, yes, that would be perfectly appropriate. The State of Ohio certainly agrees that having a competent prisoner is a desirable thing in a habeas case, and that courts do have some discretion to try to vindicate that goal. Our point, though, is simply that it cannot come at all costs, meaning it's not going to be a permanent stay. Scalia was not an indefinite stay in the absolute sense, was it? No. Because the trial proceeded. There was going to be an end, right? Well, the court in the end held up the cert petition for several decades without deciding the case. And in the end, Mr. Reese died and then the cert petition was ultimately later dismissed. I don't understand how your approach works. We – the defendant, the habeas petitioner, the allegation is made, I'm incompetent, there's support for it. The district court says, okay, I can't enter an indefinite stay, but you're going to be treated, I want you to come back in 6 months, okay, and we'll look at it then. He comes back in 6 months and there's been no change. What happens then? Another 6 months? At what point does it become indefinite? Right. Well, since we're playing on the field of equitable discretion, Your Honor, it's going to be difficult to put forward a hard and fast rule. But Justice Sotomayor rightly said that it's going to be a hard and fast rule. Well, give me a loose and soft rule.  Is it 2 years or is it 10 years? A loose and soft rule, you would say presumptively a year. And we think there's support for that even from Mr. Carter's own amici. The brief of the American Psychiatric Association, pages 19 to 21, and especially most prisoners who are ultimately successfully restored to competency, that does happen in a matter of months, 6 to 9 months at the longest end. About 90 percent of them are restored within 6 to 9 months. So we think presumptively a year would be an appropriate period of time for a limit. Well, Ms. Schimmer, why would that be? I mean, assume a case where you say a stay would be appropriate. So it's not a closed record case. It's a case where the client might be expected to provide information that's – let's assume that's necessary to a full and fair adjudication of the habeas claim. Why would you cut it off at a year? Why wouldn't it be still true in 2 years that a full and fair adjudication couldn't take place in those circumstances? Well, we think, Your Honor, at the point at which you say that the test for a limited stay is however long it takes to restore somebody's competency is the point at which we have returned to the definition of saying that indefinite stays are proper. And the bottom line is that we think that's not an indefinite stay. I think the judge would do what the Chief Justice suggested, that, you know, it's not forever and ever. We're just going to come back to it periodically. But if the answer is the same, which is that the client's participation is necessary for a full and fair adjudication, then the Court's answer should be the same, too. Why isn't that right? Because we do think that there comes a point, given the finality concerns underlying AEDPA, that a limited stay, when that window expires, the person has a reasonable period of time to be restored to competency, that when that window expires, at some point the proceedings do have to continue. Scalia. Well, it's really not the same question when it comes back, is it? Because there are two questions. Is reasonable competence useful for his defense? But also the second question, is there a reasonable probability that he can be restored to competence? The first time, there obviously is that, and you give him a year. When you come back a second time, you say, well, it's been a year, and they usually come back within 6 to 9 months, there's no longer a reasonable probability. That's exactly right, Justice Scalia. And to the extent that we are balancing different parties' interests in these cases, after the preliminary limited stay expires, we believe at that point the prisoner's interest in a continued stay has diminished and the State's interest in the proceedings continuing and moving forward has then increased, and that the Court can then There would be no stay at all unless it's necessary for just adjudication of the claim, so that would be a threshold question. That would be the threshold question. There seems to be a good amount of consensus on that point. It's the test articulated by the Sixth and Ninth Circuits and by my colleague here today. And we're willing to accept that as the test for when limited stays can be imposed. And with that, if there aren't further questions, I'll reserve the remainder of my time. Thank you, counsel. Mr. Meichelman. Mr. Chief Justice, and may it please the Court. Ohio and the United States have agreed today that courts have the authority to stay habeas proceedings when the Petitioner is mentally incompetent. So then the questions for this Court are when may such stays issue and how long may such stays be. The Court's answers should reflect the important principle that no individual should lose potentially meritorious claims because of mental illness. I'd like to begin by addressing. Sotomayor says they won't because they can come back with new evidence after habeas is closed. Why is that inadequate? I think that's a crucial question, Justice Sotomayor, that Justice Kennedy asked as well. And it goes to the limits on second or successive petitions. They can't come back if they're later competent. If they first lose their claims because they didn't have the evidence they needed and then try again later, they are subject to the bar on second or successive petitions, which requires not only that they have new facts, but also that they have new law. So that's a very restrictive standard that would not allow them to simply pick up where they left off. I'm sorry, I didn't follow that exactly. What prevents them from picking up where they left off? Mr. Chief Justice, Section 2244b, the bar on second or successive petitions. Imagine Mr. Carter has a potentially meritorious claim now that he can't speak to because of his incompetence. It's adjudicated without him. He loses it. Oh, it's adjudicated. Okay. Imagine it's adjudicated without him, he loses it, and then he can't simply waltz back into court and say, I'm here, I'm competent, hear me out. I presume that the one claim among your many, yours is the defendant who was excluded from trial, correct? Yes, Justice Sotomayor. So that if he comes back and says, I told my attorneys I would behave and I wanted to come back earlier, they never let me back in, this would not be a new claim. This would be part of the old claim that has been adjudicated, correct? Yes, Justice Sotomayor. But without his information. Yes. And, in fact, the record lends some support to this suggestion by showing that counsel frequently put their own safety and their own concerns ahead of my client's interests. For example, stating on the record, and I'm quoting here from trial counsel, I am still worried about him behaving during this phase. So the bottom line is he wants to stay where he is. So there's a question of whether trial counsel was really looking out for Mr. Carter's interests at that time. There's also the question of whether you could see from the record, the question in my mind would be whether he told counsel he would behave, and counsel ignored that information, correct? Yes, Justice Sotomayor. There is strong support in the record to suggest that Mr. Carter has additional information to provide, both about his desire to return to the courtroom and about his competence once he was removed from the courtroom. Was he hallucinating during the trial? Could he see it? Could he hear it? Could you help me with your discussion of 2244b? I have it in front of me, and the hypothetical was that he's incompetent, the claim is adjudicated, then he becomes competent, and he said, now is there some new evidence which could not have been discovered? I thought you told us that you not only have to have new evidence, but new law. That's not the way I read it. B-2-B-1. Unless I misunderstood you. No, you're right, Justice Kennedy. I misspoke. He needs new law or new facts, but the new facts have to come with a showing of actual innocence. I misstated that. I apologize. But either way, new law is not enough. New facts are not enough. Or the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, period. And B-2. Yes. The facts underlying the claim, if proven, would show that but for the constitutional evidence, it's reasonable. Yes, clear and convincing, that's true. Right. So he needs not only the new facts, but needs to meet that higher standard, showing that no reasonable fact finder would have found him guilty. But one of his claims, his ineffective assistance of counsel in mitigation, goes to not his guilt but his punishment. So that claim would be barred under 2254. Additionally, his competence doesn't go to his guilt either. Well, is it your position that any time a Petitioner raises an ineffective assistance of counsel claim, the habeas proceeding can potentially be stayed indefinitely? That's potentially correct, Justice Alito. But I would emphasize the role of the district courts as gatekeepers for only potentially meritorious claims that are truly suggested on the record that someone. I'm sorry. Go finish your answer. Where it's truly suggested on the record that the Petitioner could help, if competent, so that we wouldn't be engaging in imaginative speculation or claims that were purely record-based. So it's a truly suggested by the record standard? Well, I would say that it would be suggested by the record. I'm not sure the adverb truly is necessary. Well, how is it compared to a motion to dismiss standard? Well, I would look to this Court's decision. It's more stringent? I think it would be, well, I guess not compared to the Iqbal standard, Your Honor. Probably the plausibility standard would actually be somewhat analogous, although it would be plausible. Well, now, we've gone from plausible to truly plausible, well, truly suggested by the record. I mean, suggested by the record might be plausible. It seems to me that it's a pretty loose standard that entitles the defendant to a stay. Well, but that's not the only criterion, Mr. Chief Justice. It would be not only that it would suggest it by the record that it was a potentially meritorious claim, as the district court found, and the standard this Court endorsed in Rines, but also that the Petitioner is genuinely incompetent. This doesn't happen very often. In fact, in the State's amicus brief discussing how in their characterization this type of litigation has exploded in the Ninth Circuit, in their characterization, they pointed only to nine cases in the past nine years. So, and not all of those are plausible. Alitoso, why isn't what you're proposing just a mechanism that will permit stays in virtually every capital case if that's what the Petitioner wants, if that's what Petitioner's counsel wants? Let's say you have a case where there is a small amount of mitigating evidence about the Petitioner's childhood, but not enough to sway the sentencing authority. It's alleged that if the Petitioner had been – if the Petitioner was competent, the Petitioner could provide a lot more information about what went on during his childhood years, and therefore, the proceeding has to be stayed indefinitely until the Petitioner is restored to confidence or he dies, as happened in Ries. What do you do with that situation? Justice Alito, I think district courts have a wide amount of discretion in that matter, and they could say, well, it looks like there's a little evidence here, but based on what I think you could tell me, I don't think there's enough here. By contrast, the district court did find that Mr. Carter's competent assistance was necessary. So I think we have to trust the district courts to be gatekeepers. Alitoso, if a district court says, well, there's a little bit here and I can't rule out the possibility that there might be a lot more that's locked in the Petitioner's mind, but he's unable to provide it because he's incompetent, then I'm going to grant a stay until he's restored to competence. And then that would be insulated from being overturned on appeal by an abuse of discretion standard. That's what you're arguing. That's correct, Justice Alito. That would be something. Do you think that's consistent with AEDPA, that Congress, knowing in particular that a lot of district judges and a lot of court of appeals judges don't like the death penalty and will go to some length to prevent the imposition of that sentence, that we're just going to leave that all to the discretion of every individual district judge? I think it is consistent with AEDPA, Your Honor, because of this Court's recent jurisprudence in Martinez, in Holland, and Rines, which make clear that AEDPA did not pursue finality at all costs. It did not eliminate the discretion, the equitable discretion of the district courts that they traditionally enjoyed, as this Court stated in Holland. And as this Court stated in Martinez, the Court is concerned that there could be claims that no court will have heard, not the State court, not the Federal court. Scalia. Mr. Michelman, we have established a different standard for the degree of competence that has to exist in order to prevent execution, right? The prisoner has to be aware of what is being done and why it's being done. Yes, Justice. And that's a much lower standard than the standard of competence required for deciding whether he can assist counsel, right? It's a different standard, Justice Scalia. Well, it's no, it's a much easier standard for the State to establish. Well, it could be easier in some cases, but harder than others. Mental health science is complex, so one might be competent to assist counsel. Wait. All he has to know to prevent execution is he has to know that he's being executed for a crime, right? And in order to assist counsel, doesn't he have to know a lot more than that? That's true, Justice Scalia. The test. Well, let's just make believe that I'm right about that, okay? That there are two standards and one is really quite more difficult than the other. Why isn't the difference between the standards utterly eliminated? Because whenever there's a capital case, a habeas petition is filed and counsel says, my client cannot assist me. Oh, yes, he understands why he's being executed, but he may have a new claim, he may be able to tell me stuff, so we have to stay the execution indefinitely until he can assist me in continuing his defense. You've just converted the standard for proceeding with the execution from an easier one to a much more difficult one. I don't think that's true, Justice Scalia, because the two standards are different and for different purposes. So there could be individuals who meet one and not the other. It's not an either or choice. But then you're fighting the argument of assumption. Let's assume that the Ford standard, standard competence to be executed, is more lenient, less forgiving than competence to assist counsel. Let's assume that. Then Justice Scalia has to be right. You simply eliminated the Ford standard altogether. Not necessarily, Your Honor, because even if one is inexperienced.  Ginsburg. I mean, only in cases where the competence, the claim of incompetence is genuine. I mean, if anyone says, oh, I want to take advantage of the more defendant-friendly standard, all I have to do is allege I'm incompetent, but that's not the case. There has to be a hearing that determines he is indeed incompetent. So and most defendants I don't think would be able to establish that they are indeed incompetent. That's right, Justice Ginsburg. We – our standard builds in the assumption that there will be mental health experts that will testify to the condition of the Petitioner. So the Petitioner can't simply select a standard and declare that he meets it. He would have to satisfy mental health professionals that he meets that standard, whether it's competency to be executed or competency for these purposes. Mental health experts always agree, don't they? Those provided by the defense always agree with those provided by the prosecution. I understand sometimes that's not true, Justice Scalia, but that's why we rely on the district courts to do what they do every day in the trial competency context and adjudicate conflicting claims about a Petitioner's mental competence. Kennedy, is it correct that the Petitioners in both cases, pardon me, that the criminal defendants in both cases here, the Respondents, have all but conceded that there's no constitutional basis for the right to competency during habeas, or am I overstating that? I don't think you are, Justice Kennedy, though. I won't speak for Mr. Gonzalez. Mr. Carter does not press a constitutional argument here. Only the argument that a district court's discretion, which the State of Ohio recognizes, to stay habeas proceedings. Kennedy, but once you concede the constitutional point so that there's no fundamental unfairness, then it seems to me that you've all but given away your case. Well, I don't think there needs to be constitutional unfairness for there to be unfairness. For instance, this Court's opinion in Martinez. Well, it's fairness that's not fundamental. Or unfairness that's not fundamental. I think Martinez v. Ryan is an excellent illustration of that point, Justice Kennedy, because there the Court held not that there was a Sixth Amendment right to effective assistance of counsel at the habeas stage, but that ineffective assistance on initial review collateral proceedings could provide cause and prejudice to overcome a procedural default in order that the Petitioner would not lose his claim and that to prevent a situation where no court would hear the claim before he was executed. Well, but in that case, the whole basis of the analysis was that although it was collateral, it really was the first opportunity to raise a particular claim. You say that earlier that trial judges do this all the time in the trial context. It's an important distinction in our jurisprudence that there's a difference in terms of the rights to which you're entitled, pre-conviction and post-conviction. That's correct, Mr. Chief Justice. But if the facts haven't been presented, and here what the district court found was there were facts missing, facts that were exclusively within Mr. Carter's knowledge, they weren't presented to the State court, they haven't been available to either the State court or the Federal court, so it's possible this man could be executed and no one could have fully heard these potential meritorious claims. What is your limit? You think there's no limit on the inherent authority, that these things can go on and on? Or it's, I mean, your friend on the other side suggested one year as a presumption. Do you have any limit? Well, we would leave it in the first place to the district court's discretion. As far as the question of indefinite stays go, we agree with the State of Ohio that most competency issues are resolved within a matter of months, so we can expect But not this one, because the claim is he was never competent, isn't that so? He wasn't competent to stand trial, and he never, and his mental condition never improved. So this person, if the standard is he's got to be competent, the likelihood is he will never be competent, because he wasn't even, according to him, competent at the time he was tried. Yes, Justice Ginsburg. And this would be a rare case in which a stay might need to be more than 6 months, 9 months, a year. But because most situations, the competency issue will resolve in a short period of time, this Court shouldn't fear that it's opening the floodgates to long stays in many, many cases. This is a rare case with a very severely ill man with potentially meritorious claims that require his assistance. But why can't the competency, why can't the issue of competency at trial be resolved? Well, because the issue is that you have to be competent during the habeas proceeding in order to assist in proving that he was, that he was incompetent at the time of trial. Yes, Justice Alito, and that's because the competency question at this point is retrospective. We're not talking, it's not a matter of simply examining Mr. Carter today and saying how do you feel, what do you experience, are you hearing the voice of the devil? But it's the question of was he doing that during his trial 14 years ago? And that's why it's important that he be able to participate now. What the Sixth Circuit ordered in this case was a remand for a narrow stay with appropriate monitoring by the district court to make sure that this didn't become just sit around on the docket for years with nobody looking at it. Roberts Could you say that the question is whether or not, not whether he's competent today to assist his counsel, but whether he was 14 years ago? Yes, Mr. Chief Justice. How in the world is that? I mean, with respect to the underlying claim, that's the question. Right. How is a mental, do mental health professionals make those determinations on a regular basis? I understand that they do, Your Honor. I understand it is possible for a person with a psychosis to recover and have memories of experiences during that psychosis. Now, I admit that's not a fact in the record, but that's something that if we're dispositive could be established on remand in this case. So it's because of the rarity of these claims, because they are not going to come up every day, and because district courts exist as strong checkpoints to prevent non-genuine claims of competence or not potentially meritorious claims for which the Petitioner's assistance is necessary. A narrow stay authority should be preserved and should be applied to Mr. Carter's case. But not staying everything, according to the Sixth Circuit. The Sixth Circuit said that there are issues or it may be issues that can go forward right away, and as to that, is there any issue? Ginsburg that could be argued despite the incompetence? Yes, Justice Ginsburg. And what are those? Well, in this case, and I think it really illustrates the narrowness of the Sixth Circuit's order. In this case, he had, for example, claims about the jury instructions. He had claims about prosecutorial misconduct. He has a claim about the method of execution that the State of Ohio uses. These claims may go forward because they don't require his assistance. And it's a measure of the Sixth Circuit's moderation and discretion that they held that only the claims that genuinely require his assistance should be stayed. The others may go forward with the help of the next friend. That's a pretty inefficient system, isn't it, that the judge has to learn a particular record to dispose of claims 1 through 9 when he knows that he's not going to be able to dispose of the petition until the petitioner is competent maybe a year later, then he's got to go through the whole thing again. I can see a district court saying, well, I'm not going to get into this until I can dispose of the whole thing. Well, I suppose there would be some appeal to the notion that the district court might stay the rest of it simply waiting, Your Honor, but we don't think that's likely to happen frequently. Thank you. Thank you, counsel. Ms. Schimmer, you have 3 minutes remaining. Thank you. First off, there's nothing narrow about what the Sixth Circuit held. At page 15a of the petition appendix, the Sixth Circuit ordered that all of the ineffective assistance of counsel claims be stayed until Mr. Carter is competent, meaning these claims will be stayed at any and all cost to the progress and finality of the proceedings. Could you tell me what the value is to wait for the Ford analysis or the Ford examination to the time of execution? We think there are a few values, Justice Sotomayor. First of all is that the State has still has an interest. First of all, we don't concede that Mr. Carter is Ford incompetent. Those that inquiry has not been made. Putting that aside. Putting that aside, though, the State's interest is that it still has a powerful interest in the finality of its conviction and sentence. At all costs is what you seem to be saying. No, but even if the implementation of that sentence is ultimately forestalled by a Ford ruling, that's true in a dignitary sense, but it's also true in a practical sense, meaning the State should not, if somebody regains competence many years down the line, the whole point of AEDPA is that the State at that time should not have to be litigating a stale case, and to wait potentially 5 and 10 and 15 years until somebody's competency is restored on this total speculation that something might happen runs contrary. Sotomayor, your adversary has not said it's total speculation. He suggests that if we set a standard that requires, we can talk about what the terms are, suggestive in the record, plausible in the record, sort of situation, but assuming that there is some basis to believe that the defendant can provide information of importance to the claim, why should that be, that door be shut? And how do you deal with his answer that if the claim is not a new claim, but just new information about an old claim, that he will be barred from a successive petition? Right. Well, we still don't see how that has any traction in a case like this where whether competent or not competent, 2254d and Pinholster say this claim, all of these claims are adjudicated on the merits in State court, and therefore, no new evidence can be considered by the Federal court. So that, we think, resolves that. And in terms of how do you deal with limited stays and them going on, we would say simply that the State of Ohio's experience in this case has been that the State of Ohio has been standing ready for 10 years to defend the judgment of its State courts in this case, even though all of Mr. Carter's claims are record-based. There is no right to competence. Everybody seems to now agree on that. Indefinite stays contravene AEDPA, and we don't think that any stay is justified here because of the record-based claims. Thank you. Thank you, counsel.